# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES PHILLIP PAYNE,<br>      Petitioner,<br><br> vs.<br><br>TABB BICKELL,<br>THE COMMONWEALTH OF<br>PENNSYLVANIA,<br>      Respondents. | )<br>)<br>)<br>) Civil Action No. 14-171<br>) Judge Cathy Bissoon/<br>) Chief Magistrate Judge Maureen P. Kelly<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus by a Person in State Custody (the "Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 4, be dismissed and that a Certificate of Appealability be denied.

### II. REPORT

Charles Phillip Payne ("Petitioner") was convicted of first degree murder and firearms offenses on November 1, 2006. Petitioner has now filed the instant Petition to challenge his state court convictions. Petitioner raises six grounds for relief in the Petition. Because none of the grounds merit the grant of federal habeas relief, the Petition should be denied. Because jurists of reason would not find denial of the Petition debatable, a Certificate of Appealability should also be denied.

**A. The Facts Underlying Petitioner's Convictions.**

The Pennsylvania Superior Court summarized the facts of this case in its June 29, 2005 Opinion and Memorandum as follows:

> On June 28, 2005, at approximately 10:30 p.m., Michael Rumble had just dropped off his girlfriend, Charlene Weaver, at her apartment in the Monview Heights Housing Project in West Mifflin, Pennsylvania. Rumble was in the front passenger seat of the car being driven by his friend, Aaron Shealey since Rumble was on crutches from recent knee surgery. As they proceeded down Midway Drive, Rumble noticed three men standing by a dumpster and saw [Appellant [i.e., Petitioner]] holding a gun near the head of the victim, Jhirmon Whitaker. He then saw a flash from the gun and saw Whitaker fall to the ground. Rumble sunk down in his seat and told Shealey to speed up and to get out of the area. Before leaving the area, however, they looped around the housing project to go tell Rumble's girlfriend to go inside her house because he had just witnessed a shooting.
>
> Shealey and Rumble went back to Rumble's house and Rumble talked with his mother, told her about the shooting and she convinced him to contact the police. Approximately fifteen minutes after he arrived home, he called 911 and advised them that there had been a shooting on Midway Drive in the Monview Heights Projects and that he had witnessed the shooting. Rumble subsequently was interviewed by Homicide Detectives of the Allegheny County Police and told the police what he had seen. He identified [Appellant] as the shooter, indicating that he saw a gun in [Appellant's] hand and he saw [Appellant] fire that weapon. He told the police that he had known [Appellant] most of his life and, in fact, [Appellant] at one point in time lived across the street from him. He would see [Appellant] on a regular basis and he was positive in his identification. When he was shown a photo array, he immediately identified [Appellant] as Whitaker's killer. Rumble agreed to have his statement taped and that was done. Rumble was the Commonwealth's key witness in identifying [Appellant] as Whitaker's killer, since Shealey was driving the car and could only testify that he saw three men standing by the dumpster and as he drove by he heard gunshots, but he did not see who did the shooting or who was shot.
>
> As trial approached, Rumble became a reluctant and recalcitrant witness. Initially, he maintained that he would not answer any questions and asserted a supposed Fifth Amendment privilege. When [the] [c]ourt advised him that he had no such privilege, he indicated that he still was not going to testify. Rumble was held in contempt for his refusal to testify and lodged in the Allegheny County Jail. While in the jail, he was told to watch his back and remember what happens to snitches. Rumble was put in the Witness Protection Program and eventually agreed to testify against [Appellant], however, his trial testimony differed with respect to the taped statement that he gave to the police shortly after this homicide, in that he suggested that there was a second gun that was involved. [Appellant] took the

> stand in his own defense and presented alibi testimony which was supposedly supported by his uncle. [Appellant] maintained that at the time that this shooting occurred, he was drinking in Aces & Deuces Bar and while he had been on Midway Avenue earlier in the evening, he was not there at the time that Whitaker was shot.

Pa. Superior Court slip op., ECF No. 11-12 at 9 – 11.

### B. Procedural History

The jury apparently discredited Petitioner's version and credited the prosecution's version as the jury convicted Petitioner of, *inter alia*, first degree murder. Petitioner was sentenced on January 26, 2007 to life in prison without the possibility of parole with respect to the first degree murder conviction. He was also sentenced to consecutive five to ten year periods of incarceration for his conviction of a person not to carry a firearm. No further penalty was imposed for his conviction of possession of a firearm without a license. After having his post-trial motions and appellate rights restored, Petitioner filed post-trial motions, alleging, *inter alia*, the ineffective assistance of his trial counsel. After conducting a hearing, the trial court denied the post-trial motions. Thereafter, Petitioner filed a direct appeal to the Pennsylvania Superior Court. The trial court filed its opinion in response to the appeal. ECF No. 10-8 at 2 - 22. The Superior Court affirmed in an unpublished opinion. ECF No. 11-2 at 1 – 8.

Petitioner filed a pro se Post Conviction Relief Act ("PCRA") Petition. The PCRA trial court appointed counsel for Petitioner, who filed an amended PCRA Petition. After an evidentiary hearing, the PCRA trial court dismissed the PCRA Petition. Petitioner filed an appeal to the Pennsylvania Superior Court. In response, the PCRA trial court filed its opinion explaining its rationale for denying the PCRA Petition. ECF No. 11-9 at 1 – 11. The Superior Court issued a Memorandum Opinion affirming the denial of the PCRA petition. ECF No. 11-12

3

at 9 – 18. Although Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, the Petition for Allowance of Appeal was denied.

Petitioner initiated the instant Section 2254 habeas action in this Court on February 7, 2014. ECF No. 1. He paid the filing fee and the Petition was filed. ECF No. 4. Respondents filed an Answer, denying that Petitioner was entitled to any habeas relief. ECF No. 9. Accompanying the Answer were copies of the state court record. ECF Nos. 10 -11. Respondents also caused the original state court record to be transmitted to the Clerk of Courts. After being granted an extension of time, Petitioner filed his Traverse on July 15, 2014. ECF No. 15.

Petitioner raises the following six grounds for relief in the Petition and the Traverse.

> GROUND ONE: Whether Attorney Conrad [i.e., trial counsel] was ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution – for failing to object to, or preserve for appellate review, the claim that the jury instruction regarding accomplice liability regarding criminal homicide was erroneous in that it did not inform the jury that defendant had to possess the specific intent to kill in order to be convicted as an accomplice to first-degree murder and permitted defendant to be convicted of said offense based upon a lesser state of mind or by proof less than beyond a reasonable doubt.

ECF No. 4-1 at 2 at 5.

> GROUND TWO: There was insufficient evidence to support the conviction at CC 200511688 [i.e., the first degree murder conviction and possession of a gun by a felon] on the basis that the evidence was insufficient to show that defendant committed the crimes or that defendant possessed the requisite intent to commit first-degree murder – in violation of the Fourteenth Amendment to the United States Constitution.

Id. at 3 – 4.

> GROUND THREE: Defendant[']s convictions at CC 200511688 are against the weight of the evidence on the basis that evidence, the great weight of the evidence showed that defendant was not the person who committed the crimes or that did not possess the requisite intent to commit first-degree murder – in violation of the Fourteenth Amendment to the United States Constitution.

4

Id. at 5.

>GROUND FOUR: Trial counsel was ineffective - - in violation of the Sixth and Fourteenth Amendments to the United States Constitution - - for failing to request a Kloiber instruction regarding the identification testimony of Commonwealth witness Michael Rumble.

Id. at 6.

>GROUND FIVE: Trial counsel was ineffective for failing to object to the alibi instruction, which did not place the burden on the Commonwealth to disprove the alibi – in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Id. at 8.

>GROUND SIX: Cumulative prejudice.

ECF No. 14 – 15.[1]

**C. The AEDPA Applies.**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because the instant Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that

---

[1] Although not raised in the Petition, Petitioner raises a claim of cumulative prejudice for the first time in his Traverse.

5

Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**D. Discussion**

**1. Grounds One, Four and Five do not merit relief.**

In Grounds One, Four and Five, Petitioner raises claims of ineffectiveness of trial counsel.

In addressing these three claims, the Superior Court applied the state court test for ineffective assistance of counsel ultimately derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). See ECF No. 11-12 at 13 – 14 (Ground Five); ECF No. 11-2 at 4 - 8 (Grounds One and Four).² The Pierce standard has been found to be materially

---

² The Superior Court on direct appeal affirmed on the basis of the trial court's opinion. ECF No. 11-2 at 4 ("Because the trial court's opinion adequately and accurately disposes of the issues in this case, we affirm on the basis of that opinion."). As a consequence, we will primarily
(…footnote continued)

6

identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland in the sense of being a wrong rule of law, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204.

Because the state courts decided Grounds One, Four and Five under the standards of Pierce and those standards are essentially the same as the Strickland standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing that the decisions of the state courts, applying the Pierce standard, are contrary to the standard announced in Strickland.

### a. The Superior Court decision was not contrary to United States Supreme Court precedent.

Petitioner has not carried his burden to show the Pennsylvania Superior Court's disposition was contrary to clearly established federal law, i.e., that there existed any United States Supreme Court decision on ineffective assistance of counsel, at the time that the Superior Court rendered its decision in this case, that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the state courts herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary

---

analyze the trial court's opinion in the following discussion applying the AEDPA standards to that opinion. Trial Court Op., ECF No. 10-8 at 2 - 22. The trial court applied the Pierce standard to Petitioner's claims of ineffectiveness. Id. at 6.

to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Indeed, even assuming that <u>Strickland</u> had a set of facts that are materially indistinguishable from the facts of Petitioner's case, the outcome of <u>Strickland</u> and the outcome in Petitioner's direct and PCRA appeals in the Superior Court were the same, i.e., the criminal defendant was denied relief. Accordingly, Petitioner has not shown that the Pennsylvania Superior Court's decisions in this case were contrary to clearly established federal law as determined by the United States Supreme Court.

### b. The Superior Court decision was not an unreasonable application of United States Supreme Court precedent.

Petitioner fails to show that the state courts' disposition of his claims was an unreasonable application of United States Supreme Court precedent concerning ineffective assistance of counsel. In <u>Strickland</u>, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). In reviewing counsel's actions, the court presumes that counsel was effective. <u>Strickland</u>, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential

8

standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

As to the second component under Strickland, the defendant must show that he was prejudiced by the allegedly deficient performance of counsel. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Because the Superior Court addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

Premo v. Moore, 562 U.S. 115, __, 131 S.Ct. 733, 740 (2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at

9

1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'").

### c. Ground One does not merit relief.

In Ground One, Petitioner contends that his trial counsel was ineffective for failing to object to the trial court's jury instruction on accomplice liability. Specifically, Petitioner complains that the accomplice instruction did not require the jury to find that Petitioner possessed the specific intent to commit murder in order to find him liable as an accomplice even if he did not himself shoot the gun.

The trial court's opinion, adopted by the Superior Court on direct appeal, addressed this issue on the merits. ECF No. 10-8 at 12 – 18. The trial court essentially held that the jury instructions taken as a whole adequately conveyed to the jury that in order to find Petitioner guilty of first degree murder either as a principal or as an accomplice, the jury had to find Petitioner possessed the specific intent to kill and, therefore, Petitioner's counsel could not be ineffective for failing to object to the accomplice instructions. Id. at 17 ("Since the charge was correct and there was no error of law, it is clear that Payne's counsel could not have been ineffective for objecting to [sic] the charge in the manner in which it was given.").

While the Superior Court adopted the opinion of the trial court it added the following additional ground for rejecting this particular claim of trial counsel's ineffectiveness:

> As to appellant's first claim, we recognize that the trial court's instructions could have been more explicit that to be liable as an accomplice to first-degree murder, the defendant must individually harbor the specific intent to kill. In the instant case, the trial court instructed the jury on accomplice liability only as to the general crime of homicide, rather than the specific crime of first degree murder. Nevertheless, when taken as a whole, the instructions do accurately state the law. . . . Furthermore, as Attorney Conrad [i.e., Petitioner's trial counsel] observed during the hearing on appellant's post-sentence motions, appellant offered an alibi; his defense was one of mistaken identity, not that the other unidentified individual fired the shot that killed Whitaker. Appellant testified that he was at

> Aces & Deuces Bar during the shooting. Therefore it would be difficult for appellant to demonstrate that he was prejudiced by the failure of trial counsel to object to the jury instruction regarding accomplice liability. Accordingly, appellant's claim of ineffectiveness fails.

ECF No. 11-2 at 4 -5 n.1 (citations omitted).

We deem the foregoing analysis by the Superior Court to be a conclusion that Petitioner failed to carry his burden to show that he was prejudiced by the failure of his trial counsel to object to the jury instruction on accomplice liability, i.e., to show that there was a reasonable probability that the outcome of the trial would have been different had counsel objected to the accomplice liability instruction.

Furthermore, we find that Petitioner has not carried his burden here to show that the Superior Court's conclusion that Petitioner failed to show prejudice constituted an unreasonable application of the Supreme Court's decisions on ineffective assistance of counsel.

Even if we were to review this claim *de novo*, we would reach the same conclusion, namely, that in light of the eyewitness identification of Petitioner by his long-time acquaintance as being present at and as participating in the murder, Petitioner simply cannot show prejudice on this record. Accordingly, Petitioner's Ground One does not afford Petitioner habeas relief.

### d. Ground Four does not merit relief.

In Ground Four, Petitioner contends that his trial counsel was ineffective for failing to request a <u>Kloiber</u> instruction, which would have cautioned the jury as to Rumble's identification of Petitioner as participating in the murder of the victim. As explained by the state courts, a <u>Kloiber</u> instruction is a state law instruction based upon <u>Commonwealth v. Kloiber</u>, 106 A.2d 820 (Pa. 1954). Essentially, state law requires a <u>Kloiber</u> instruction where there is a necessity to tell the jury that they should receive eyewitness identification testimony with caution where there is a question as to whether the identification is accurate or not.

The trial court addressed this issue on the merits and found that trial counsel was not ineffective for failing to request a Kloiber instruction because the pre-requisites for requiring a Kloiber instruction under state law were not met, and therefore, counsel could not be ineffective for failing to request such an instruction that was not called for and would not be proper under state law. Specifically, the trial court reasoned:

> As noted in ***Commonwealth v. Jones, 954 A.2d 1194, 1198 (2008 Pa. super. 160)***, a ***Kloiber*** instruction is only required when there is a question as to the eyewitnesses [sic] ability to have the opportunity to see the alleged perpetrator, the witness' equivocation of his identification or his inability at a prior time to have made such an identification. When the identification is unequivocal, there is no need for such an instruction.
>
> . . . .
>
> It is clear from the record that Rumble's testimony was unequivocal, consistent and independently based, and, as such, there was no need for a ***Kloiber*** instruction. . . . Since there was no necessity [under state law] for a ***Kloiber*** instruction, Payne's counsel could not have been ineffective for failing to request such an instruction or in failing to object to its absence.

ECF No. 10-8 at 11 – 12. The trial court's reasoning is that because there was no merit for requesting a Kloiber instruction, and inferentially, even if one had been requested by Petitioner's counsel, such a request would have been denied as being improper under state law, the failure of trial counsel to make such a meritless request cannot constitute ineffectiveness. This reasoning was adopted by the Superior Court as noted above. Not only has Petitioner failed to show that this was an unreasonable application of Supreme Court precedent, we find this rationale an eminently reasonable application of the Strickland standard. Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim."). Accordingly, Ground Four does not afford Petitioner relief in these federal habeas proceedings.

### e. Ground Five does not merit relief.

In Ground Five, Petitioner asserts that his trial counsel was ineffective for failing to object to the alibi instruction. Specifically, Petitioner contends that the alibi instruction was faulty because the trial court did not specifically instruct the jury that the Commonwealth had the burden to disprove Petitioner's alibi and Petitioner did not have the burden to prove his alibi. Petitioner contends that trial counsel was ineffective for failing to object to this failure in the alibi instruction.

The Superior Court addressed this issue on the merits. ECF No. 11-12 at 12 – 18. Essentially, the Superior Court noted that the trial court's instructions on the alibi when read together with the trial court's instructions on the Commonwealth bearing the burden of proof and the presumption of innocence accurately conveyed the law and so, there was no basis for Petitioner's trial counsel to object. The Superior Court concluded that "[b]ecause the entirety of the court's jury instructions correctly informed the jury about the nature of an alibi, counsel had no reasonable basis to object. The court properly concluded Appellant's ineffective assistance claim lacked arguable merit on the ground asserted." Id. at 17 – 18.

The Superior Court's reasoning does not quite meet Petitioner's argument as we understand it. Petitioner does not necessarily argue that the instructions were absolutely erroneous but that the instructions could have been clearer and more explicit and that counsel had no reasonable basis for not requesting that the instructions be made clearer to be more explicit that Petitioner had no burden of proof with respect to the alibi defense but rather that the Commonwealth bore the burden to disprove the alibi defense. We do not decide whether Petitioner has carried his burden to show that the Superior Court's reasoning is an unreasonable application of United States Supreme Court precedent.

Rather, we conclude under *de novo* review of Ground Five that, in light of the record evidence of Petitioner's guilt, given the eyewitness testimony of Rumble, a twenty year acquaintance of Petitioner's, Petitioner simply cannot show prejudice due to counsel's failure to request a clearer alibi instruction. Accordingly, Ground Five does not merit the grant of federal habeas relief.

**2. Ground Two does not merit relief.**

In Ground Two, Petitioner contends that there was insufficient evidence to support convictions for first degree murder, felon in possession of a weapon, and possession of a fire arm without a license.

The trial court addressed the issue of the insufficiency of the evidence to support Petitioner's first degree murder conviction, describing the Pennsylvania legal test for sufficiency of the evidence as follows:

> [a] claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing the insufficiency claim the court is required to view the evidence in a light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

ECF No. 10-8 at 19 (citations omitted).

As the United States Court of Appeals for the Third Circuit has held, this Pennsylvania standard is not "contrary to" the federal legal standard announced by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979), in the sense that the two rules are different. Eley v. Erickson, 712 F.3d 837, 848 (3d Cir. 2013) ("We agree with the Superior Court's later conclusion on PCRA appeal that these rules do not contradict *Jackson*. *Id*. at 612 ('[T]he federal

14

standard enunciated in *Jackson* is [not] any different from that employed in Pennsylvania when reviewing sufficiency of the evidence questions.'). Nor does Eley argue that the facts of his case are materially indistinguishable from *Jackson*. Thus, we hold that the Superior Court's adjudication of Eley's sufficiency of the evidence claim was not contrary to *Jackson*."). In similar fashion, Petitioner fails to argue, yet alone establish that the state courts' adjudication of his insufficiency of the evidence claim is contrary to Jackson in the second sense, i.e., that his case and the Jackson case have materially indistinguishable facts and that the state courts decided his case differently than the outcome of the Jackson case. In both cases, the evidence was found to be sufficient.

Petitioner does attempt to show that the state courts' adjudication of his insufficiency claims was an unreasonable application of Jackson. But, we are not persuaded.

The trial court addressed the sufficiency of the evidence claim as follows:

> With respect to the sufficiency of the evidence claim and in looking at the evidence in light most favorable to the Commonwealth, it is clear that the testimony of Rumble was more than sufficient to show that Payne killed Whitaker and that he had the specific intent to do so since he pointed and fired the gun at a vital part of the victim's body. Despite the fact that Rumble introduced a second gun in his testimony at the time of trial, he still maintained that Payne was the shooter and that was consistent not only with his initial statements to the police but, also, with his taped statement.

ECF No. 10-8 at 21 – 22. We agree with the state courts that viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to convict Petitioner of first degree murder.

In his Traverse, Petitioner argues that "[f]orensic Pathologist Bennet Omalu's testimony concerning the manner in which the victim was shot is not consistent with Mr. Rumble's testimony of what he testified he allegedly witnessed. Mr. Rumble's testimony is in conflict

15

with (incontrovertible) physical facts of the case and the manner in which the victim was shot and should be rejected as a matter of law." ECF No. 15 at 8. Petitioner gives no specifics as to how Mr. Rumble's testimony and that of Dr. Omalu's testimony were in direct opposition to each other or why Rumble's testimony is in conflict with incontrovertible physical facts. Absent such elaboration, Petitioner fails to carry his burden to show entitlement to habeas relief based on Ground Two.

### 3. Ground Three does not set forth a cognizable claim.

In Ground Three, Petitioner contends that the verdict of guilt as to the first degree murder is against the weight of the evidence. Respondents point out that such a claim is not cognizable in federal habeas proceedings. ECF No. 9 at 37.

Respondents are correct. McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus,"); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); Davis v. Lavan, NO. CIV.03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004)("a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court."). Accordingly, Ground Three cannot provide a basis for federal habeas relief.

### 4. Cumulative prejudice

For the first time in his Traverse, ECF No. 15 at 14 – 15, Petitioner argues that "cumulative errors" or "cumulative prejudice" requires the grant of federal habeas relief. While

Petitioner may be correct that cumulative prejudice may provide a basis for relief in federal habeas proceedings, such a claim of cumulative prejudice is a distinct federal claim that must itself have been exhausted in the state courts, and it does not appear that Petitioner has done so. At least he has not shown that he has done so.[3] To the extent that he has not exhausted this claim, and because he cannot now go back to state courts to do so, he has procedurally defaulted this claim. Collins v. Secretary of Pa. Dept. of Corrections, 742 F .3d 528, 543 (3d Cir. 2014) (holding that Collins procedurally defaulted his claim that cumulative errors deprived him of due process where the "cumulative error claim was not presented to the Pennsylvania Supreme Court as an individual claim for relief"); Seiler v. Superintendent SCI-Coal Tp., No. CIV.A. 12-347, 2013 WL 1180762, at *4 (W.D. Pa. Feb. 20, 2013) ("Petitioner did not present his remaining two habeas claims in either his direct appeal or his PCRA proceeding. These claims similarly are procedurally defaulted because they were never presented to the state courts and, because of the PCRA statute of limitations, Petitioner cannot now go back and present them to the state courts."). As such, this claim cannot provide a basis for relief in these federal habeas proceedings.

---

[3] It is a Petitioner's burden to prove exhaustion of a claim. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) ("The habeas petitioner carries the burden of proving exhaustion of all available state remedies."), and so the burden is on Petitioner to show where in the record he did exhaust this claim. Petitioner has not done so.

17

## III. CERTIFICATE OF APPEALABILITY

Because we conclude that jurists of reason would not find the foregoing debatable, a Certificate of Appealability should be denied.

## IV. CONCLUSION

For the reasons set forth herein, it is respectfully recommended that the Petition be dismissed and that a Certificate of Appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

Date: January 22, 2016

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Cathy Bissoon
United States District Judge

Charles Phillip Payne
HU-9154
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654

All counsel of record via CM-ECF